1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

8
9
10

11  SA MUSIC, LLC, WILLIAM KOLBERT,
    AS TRUSTEE OF THE HAROLD ARLEN
12  TRUST, RAY HENDERSON MUSIC CO.
    INC., FOUR JAY MUSIC COMPANY, and
13  JULIA RIVA,

14                          Plaintiffs,

15              v.

16  AMAZON.COM, INC.,
    AMAZON.COM SERVICES LLC,
17  PICKWICK INTERNATIONAL LIMITED,
    PICKWICK GROUP LIMITED,
18  PICKWICK AUSTRALIA PTY LTD., and
    MASTERCORP PTY. LTD.,
19
20                          Defendants.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**JURY DEMAND**

21
22              **Basis for Jurisdiction**

23      1.      The Court has jurisdiction over the subject matter of this action against

24  all Defendants pursuant to 28 U.S.C. § 1338(a) because this is an action for copyright

25  infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, 106, 115,

26  501, 602 *et seq.*

27
28

COMPLAINT 1

### Introduction

2.      Plaintiffs are the legal and/or beneficial copyright owners of musical works authored by Harold Arlen one of the premier composers of American music.

3.      Harold Arlen wrote or co-wrote some of the most popular modern songs, including *Over the Rainbow* from The Wizard of Oz and many other seminal works in the American songbook, including *I've Got the World on a String*, *Stormy Weather*, *The Devil and the Deep Blue Sea*, *Come Rain or Come Shine*, *Get Happy*, *Ill Wind* and *It's Only A Paper Moon*.

4.      Ray Henderson wrote or co-wrote some of the most popular modern songs, including many seminal works in the American songbook, including *Bye Bye Blackbird, Has Anybody Seen My Girl? (a/k/a "Five Foot Two, Eyes of Blue"), I'm Sitting on Top of the World, Life Is Just a Bowl of Cherries, Varsity Drag, The Best Things in Life Are Free, Button Up Your Overcoat* and *Animal Crackers in My Soup*.

5.      Harry Warren wrote over 800 songs, including *At Last, Chattanooga Choo Choo, I Only Have Eyes for You, You Must Have Been a Beautiful Baby, Jeepers Creepers, The Gold Diggers' Song (We're in the Money), Lullaby of Broadway, You'll Never Know, On the Atchison, Topeka and the Santa Fe, That's Amore, Nagasaki, There Will Never Be Another You,* and *The More I See You*.

6.      The Composition Chart annexed as Exhibit A provides a list of Plaintiffs' copyrighted compositions at issue in this case (the "Subject Compositions").

7.      The works of Arlen have been recorded by the most prominent jazz and popular artists of all time, including Art Tatum, Art Blakey, Benny Goodman, Billie Holliday, Buddy Rich, Cab Calloway, Charlie Parker, Coleman Hawkins, Count Basie, Dean Martin, Dizzy Gillespie, Duke Ellington, Ella Fitzgerald, Etta James, Frank Sinatra, Fred Astaire, John Coltrane, Judy Garland, Lena Horne, Louis Armstrong, Miles Davis, Quincy Jones, Ray Charles, and Sarah Vaughan to name only a few. These monumental works of art are, quite literally, national treasures.

COMPLAINT 2

8.     These and other recordings of Plaintiffs' copyrighted musical works have been pirated by the Defendants in this case. Defendants are all players in the digital music business that participate in, and jointly profit from, making digital phonorecord deliveries (*i.e.*, downloads) of pirated recordings of the Subject Compositions.

9.     Digital phonorecord deliveries of musical recordings constitute a reproduction and distribution of the musical work embodied in the digital recording and require a license from the copyright owner of the musical composition, sometimes referred to as a "mechanical license."

10.     Defendants have failed to obtain any license that would authorize them to reproduce, distribute, or sell the recordings of the Subject Compositions identified on Exhibits B-D and, as a result, Defendants have infringed Plaintiffs' exclusive rights of reproduction and distribution of the Subject Compositions, under 17 U.S.C. §§ 106(1) and 106(3).

11.     Further, the activity of making digital phonorecord deliveries of pirated recordings of the Subject Compositions does not qualify for a compulsory license or as a covered activity under Section 115 of the Copyright Act.

12.     A list of the pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization, including by making digital phonorecord deliveries, thus far identified, is set forth in the Infringement Chart annexed as Exhibits B-D.

13.     All the recordings identified on Exhibits B-D are pirated. Plaintiffs have thus far identified over 1,000 pirated recordings of the Subject Compositions that have been separately reproduced and distributed as digital phonorecord deliveries by Defendants in the Amazon digital music store as set forth in the Infringement Chart annexed as Exhibits B-D. Defendants have infringed these works in a concerted and distinct distribution chain.

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

### Defendants' Piracy is Massive and Flagrant

14.     The Amazon music store sold pirated recordings, provided by Pickwick, of virtually every well-known recording artist from the 1930s through the 1960s, including Frank Sinatra, Ella Fitzgerald, Miles Davis, Louis Armstrong, Billie Holiday, Mel Torme, Ray Charles, Lena Horne, and Judy Garland.

15.     The scope and flagrant nature of Defendants' piracy cannot be understated. It is obvious that the recordings listed in Exhibits B-D are pirated by virtue of the scope of the Pickwick catalog and the replication of the original album artwork while removing the original label logos.

16.     Album cover art has been an essential part of the packaging and marketing and labels have taken great care to create album artwork commensurate with the music it accompanied. Not so with Pickwick, which steals the album art and music wholesale for its bootlegged albums. For example, the Pickwick album art in the following releases is copied wholesale from the original releases, except for the removal of the logo of the issuing record label:

   

*Columbia Release*          *Vogue Release*          *RCA Release*          *Decca Release*

   

*Pickwick*          *Pickwick*          *Pickwick*          *Pickwick*

COMPLAINT 4

17.   In many instances, the Amazon music store is selling the legitimate release by the original label side by side with Pickwick's bootlegged copy. For example, in 1958 Lion Records released Lena Horne's album, <u>I Feel Smoochie</u>, which included her acclaimed version of *Come Rain Or Come Shine*:



*Lion Records 1958*                    *Cool Note*

18.   <u>The Genius of Art Tatum</u> is a 1953-54 series of solo albums by jazz pianist Art Tatum. First released on the Clef Records label, they were added to the Grammy Hall of Fame in 1978. In fact, the "Clef" label name hidden in the fold of Tatum's coat on his right arm (circled) and was copied on the Pickwick pirated copy:




*Clef Records (1954)*                    *Cool Note (2011)*

COMPLAINT 5

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

1

2  19. Rosemary Clooney's 1960 studio album, <u>Clap Hands! Here Comes</u>

3 <u>Rose!</u> received a Grammy nomination for album of the year. The album features Ray

4 Henderson's classic *Bye Bye Blackbird* and Harold Arlen's *Hooray For Love*:

5

6

7

8

9 

10

11

12

13

14      *RCA (1960)*        *Cool Note (2011)*

15  20. Dinah Washington's album, <u>This Is My Story</u> was released by Mercury

16 in 1963 and features an orchestra conducted by Quincy Jones and an outstanding

17 performance of Arlen's *Stormy Weather*:

18

19

20

21 

22

23

24

25

26    Mercury 1963 Album      Pirated Copy for sale on Amazon – P&R (2011)

27

28

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

21.     Similarly, in 1959, Riverside released the album <u>Chet Baker Introduces Johnny Pace</u>, featuring trumpeter Chet Baker and vocalist Johnny Pace, which included the Harry Warren standard, *This Is Always*, and the Harold Arlen, masterpiece, *When the Sun Comes Out*. The legitimate release is sold on Amazon in for $9.99 direct competition with the pirated Pickwick release, which Defendants offer, deeply discounted, for $6.99. Defendants' pirated copy is further promoted as "Amazon's Choice." In addition, Defendants have appropriated album artwork (eliminating the Riverside logo) as evidenced by the following the Amazon screenshot:



https://www.amazon.com/s?k=chet+baker+introduces+johnny+pace&i=digital-music&ref=nb_sb_noss

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

22.     All of this should have made it obvious that Pickwick is operating a huge music piracy operation. Amazon had actual knowledge of, and/or willfully chose to ignore, the evidence of piracy and participated in the infringement on a massive scale.

23.     To put this case in context, in 2007, Jammie Thomas-Rasset, a single mother of four in Brainerd, Minnesota, was found liable, after three separate jury trials, for copyright infringement for using file sharing software that enabled the unauthorized downloading and distribution of 24 recordings by the Goo Goo Dolls and Def Leppard, among others. The juries awarded statutory damages in all three trials of up to $80,000 per infringement. The Eighth Circuit Court of Appeals ultimately affirmed statutory damages in the amount of $9,250 for each infringed recording, for a total award of $222,000. Ms. Thomas-Rassett declared bankruptcy as she had "no other option."

24.     In 2009, Joel Tenenbaum, a Massachusetts college student, who also used file-sharing software that permitted others to download 30 recordings by Limp Bizkit and Blink-182, was found liable and the jury awarded statutory damages of $22,500 per recording, for a judgment that totaled $675,000 forcing Mr. Tenenbaum to file for Chapter 7 bankruptcy.

25.     Unlike Ms. Thomas-Rassett and Mr. Tenenbaum who were not alleged to have sold their infringing recordings or profited from their conduct, Defendants in this case have engaged in massive music piracy operation for the purpose of generating profits from their sales of pirated recordings and by other means.

26.     The copyright infringement operation detailed in this Complaint is only the latest in a long line of piracy schemes that have plagued composers, publishers, and record labels since the inception of the music industry over 100 years ago, when the perforated rolls used by player pianos to perform musical works were pirated. See *Aeolian Co. v. Royal Music Co.*, 196 F. 926 (W.D.N.Y. 1912).

COMPLAINT 8

27.     As the technology employed by the music industry to reproduce musical works advanced, bootlegging efforts by music pirates kept pace. In the 1960s and 1970s, organized criminal enterprises engaged in record and tape piracy operations on a scale that is dwarfed by the infringing conduct explained herein. Like the Defendants in this case, the "tape pirates" and "record pirates" of years past unlawfully duplicated popular pre-existing recordings, and then claimed their liability was limited by the compulsory license provision of the 1909 Copyright Act, § 1(e).

28.     The landmark case *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972) settled the issue as to whether tape pirates could limit their liability for piracy under the compulsory license provision of the 1909 Copyright Act. In *Duchess*, the defendant tape pirate engaged in the same conduct identified in this Complaint, and claimed her conduct was lawful because the compulsory license provision of the Copyright Act authorized the reproduction and distribution of the musical works embodied on the recordings she pirated. The Ninth Circuit rejected the argument, stating, "She may not continue her piracy under the flag of compulsory licensing." The *Duchess* court concluded that the tape pirates' activity was ineligible for a compulsory license and that reproduction of a musical composition on a pirated recording infringed the copyright in the composition, even when a compulsory license was claimed.[1]

29.     The holding in *Duchess* was codified when the Copyright Act was revised in 1976. The statutory bar against compulsory licensing of pirated recordings continues in the recent amendments to Section 115 of the Copyright Act, which

---

[1] The criminal conduct of "tape pirates" became a priority of the Attorney General of the United States, Edward H. Levi, in 1975 when the Justice Department determined that decisions reached by four Circuit Courts of Appeals, including the Ninth Circuit in *Duchess*, rendered tape pirates criminally liable even where the statutory royalty was tendered. See *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wisc. 1975). Criminal copyright infringement sentences continue to this day. See *Matter of Zaragoza-Vaquero*, 26 I&N Dec. 814 (BIA 2016)(defendant sentenced to 33 months in prison and ordered to be removed from the United States for selling bootleg copies of music CDs at a Florida flea market, as a crime involving moral turpitude).

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

provides that reproduction and distribution of pirated sound recordings is not a covered activity under Section 115 and is ineligible for a compulsory license.

30.    Defendants are nothing more than modern tape pirates and their conduct constitutes willful copyright infringement of the Subject Compositions in violation of the United States Copyright Act [17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*] (the "Copyright Act").

### SA Music, LLC

31.    Plaintiff SA Music, LLC is a Nevada limited liability company and Sam Arlen is the sole member of the company.

### The Harold Arlen Trust

32.    Plaintiff William Kolbert is the Trustee of the Harold Arlen Trust (the "Harold Arlen Trust"), a trust created by Harold Arlen in his will.

### Ray Henderson Music Co. Inc.

33.    Plaintiff Ray Henderson Music Co. Inc. is a Delaware corporation with a principal place of business in Maryland.

### Four Jays Music Company

34.    Plaintiff Four Jays Music Company is a California corporation with a principal place of business at 421 E. 6th St. in Los Angeles, California.

### Julia Riva

35.    Plaintiff Julia Riva is Harry Warren's granddaughter and the President of Four Jays Music Company. Julia Riva is a resident of Los Angeles, California.

### Amazon

36.    Upon information and belief, Defendant Amazon.com, Inc. is a corporation organized under the laws of the State of Delaware with a place of business at 410 Terry Ave. N Seattle, WA 98109

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

37.     Upon information and belief, Amazon Digital Services LLC is a limited liability company organized under the laws of the State of Delaware with a place of business at 410 Terry Avenue N, Seattle, WA 98109.

38.     Upon information and belief, Defendant Amazon.com Services LLC is a limited liability company organized under the laws of the State of Delaware with a place of business at 410 Terry Avenue N, Seattle, WA 98109.

39.     On January 1, 2020, Amazon Digital Services LLC was merged into Defendant Amazon.com Services LLC pursuant to and in accordance with Title 6, Section 18-209 of the Limited Liability Company Act of the State of Delaware ("Section 18-209").

40.     Under Section 18-209, all liabilities and duties of Amazon Digital Services LLC attached to, and may be enforced against, Defendant Amazon.com Services LLC, as if they had been incurred or contracted by it.

41.     Amazon.com, Inc., Amazon Digital Services LLC, and Amazon.com Services LLC are united in interest and shall be referred to, individually and collectively, as "Amazon".

42.      Amazon has owned and operated a digital music store under various names since 2007, including "Amazon MP3" at launch and currently, "Amazon Music Store" or "Digital Music Store" that sells permanent downloads. Amazon currently offers a catalog of over 40 million tracks for sale as permanent downloads in the U.S.

43.     Amazon specifically selected and contracted with Pickwick (directly and/or through its distributor) to provide the Pickwick digital music catalog to be sold through the Amazon music store on negotiated financial terms.

44.     Amazon received all the recordings of the Subject Compositions identified on Exhibits B-D from Pickwick (directly and/or through its distributor). Amazon then reproduced, distributed and sold these pirated recordings of the Subject Compositions in the Amazon music store, without any license whatsoever, as

COMPLAINT 11

permanent downloads among other types of digital phonorecord deliveries identified herein.

*Pickwick*

45.     Upon information and belief, Defendant Pickwick Group Limited is a business entity organized under the laws of the United Kingdom with a place of business at Suite 1, Second Floor - Merritt House, Hill Avenue, Buckinghamshire, UK.

46.     Upon information and belief, Defendant Pickwick International Limited is a business entity organized under the laws of the United Kingdom with a place of business at Suite 1, Second Floor - Merritt House, Hill Avenue, Buckinghamshire, UK.

47.     Upon information and belief, Defendant Pickwick Australia Pty Ltd is a business entity organized under the laws of Australia with a principal place of business at 35 Gosford Street, Mount Gravatt QLD 4122.

48.     Upon information and belief, Defendant Mastercorp Pty. Ltd. is a business entity organized under the laws of Australia with a principal place of business at 35 Gosford Street, Mount Gravatt QLD 4122.

49.     Defendants Pickwick Group Limited, Pickwick International Limited, Pickwick Australia Pty Ltd, and Mastercorp Pty. Ltd. are united in interest and shall be referred to, individually and collectively, as "Pickwick".

50.     Upon information and belief, Pickwick, without any authority, duplicated pre-existing  recordings embodying the Subject Compositions identified on Exhibits B-D, distributed them to Amazon for sale in their digital  music stores without any license, and unlawfully authorized Amazon's making of digital phonorecord deliveries in their music store as specifically set forth in the annexed Exhibit B-D.

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

51.     Upon information and belief, Pickwick is simply taking recordings of the Subject Compositions made by others without permission, duplicating and delivering them to Amazon under various label names, including but not limited to Cool Note, Foyer, Hallmark, Leverage, Mastercorp Pty. Ltd., P&R, Pickwick, Pickwick Group Ltd., and Roots, and authorizing Amazon to sell reproductions of the pirated copies for profit in the Amazon music store.

**Jurisdiction, Venue and Joinder**

52.     This Court has personal jurisdiction over Defendants. Amazon has its principal place of business in Seattle, Washington and all Defendants have purposefully availed or directed their infringing activities in Washington.

53.     Further, Plaintiffs' copyright infringement claims arise out of (a) the reproduction and distribution of pirated recordings of the Subject Compositions listed in Exhibits B-D, occurring in the Western District of Washington, directly by Defendants and/or at their purposeful direction and availment, including the sale of pirated recordings of Subject Compositions to Western District of Washington residents; or (b) transactions consummated within Western District of Washington between Pickwick and Amazon concerning reproduction, distribution and delivery of the pirated recordings of the Subject Compositions.

54.     Pickwick (directly and/or through a distributor) intentionally directed and authorized Amazon to distribute the pirated recordings for sale through the Amazon music store.

55.     Pickwick intentionally distributed and delivered the pirated recordings of the Subject Compositions identified in Exhibits B-D to Amazon, directly and/or through a distributor, and unlawfully authorized Amazon to reproduce these pirated recordings of the Subject Compositions through the Amazon music store and to sell permanent downloads to Washington consumers.

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

56.     Venue is proper in this District pursuant to 28 U.S.C §§ 1391(b), 1391(c) and 1400(a) because Amazon has its principal place of business in this state. In addition, Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

57.     Joinder of Pickwick and Amazon is proper under Fed. R. Civ. P. 20 because Defendants are jointly and severally liable as members of a distinct distribution chain for the acts of copyright infringement identified herein.

### Harold Arlen

58.     Harold Arlen (1905–1986) was a master composer and a highly regarded contributor to the Great American Songbook. The son of a synagogue cantor, Arlen was born in Buffalo, New York and emerged as one of the greatest American composers and songwriters, writing extraordinarily complex melodies and harmonies that remained accessible to a broad popular audience.

59.     Early in his career, Arlen wrote songs for musicals, including the entire scores for Broadway shows such as Cotton Club Parade, Life Begins at 8:40, Bloomer Girl, St. Louis Woman, Jamaica and Saratoga, among others.

60.     Arlen was also active in Hollywood and composed the music for some of the greatest film musicals of all time, most notably all the music in the 1939 motion picture classic "The Wizard of Oz," including *Ding, Dong! The Witch Is Dead*, *We're Off To See The Wizard*, and *Over The Rainbow*.

61.     *Over The Rainbow,* performed by Judy Garland in the film, won the Academy Award for Best Original Song. The song is one of the most enduring standards of the 20th century and was voted number one on the "Songs of the Century" list compiled by the Recording Industry Association of America and the National Endowment for the Arts. The American Film Institute also ranked *Over The Rainbow* the greatest movie song of all time.

COMPLAINT 14

62.     Arlen successfully collaborated with the greatest Tin Pan Alley lyricists, including "Yip" Harburg, Ira Gershwin, Johnny Mercer, Leo Robin and Ted Koehler.

63.     Arlen's partnership with Harburg extended over many decades. With Billy Rose, they wrote *It's Only A Paper Moon* in 1933. They followed up with a successful revue, Life Begins at 8:40, which included lyric collaborations with his old friend, Ira Gershwin, including *Fun to Be Fooled*, *You're A Builder Upper*, and *Let's Take A Walk Around The Block*.

64.     Arlen was inducted into the Songwriters Hall of Fame in 1971 and was honored with its highest accolade, the Johnny Mercer Award, in 1982. In 1996, Arlen was honored and memorialized by the U.S. Postal Service with his own stamp:



**SA Music LLC and the Harold Arlen Trust**

65.     Harold Arlen's son, Sam Arlen, acquired the U.S. copyrights in the Subject Compositions between 1989 and 2015, by termination notices that he, as sole statutory heir under Section 304 of the Copyright Act of 1976, served and filed with Copyright Office.

66.     In 2018, Sam Arlen assigned the U.S. copyrights in the Subject Compositions, as set forth in the Composition Chart annexed as Exhibit A, along with all accrued causes of action, to his company, SA Music, LLC. SA Music, LLC is the

COMPLAINT 15

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA 98101
TELEPHONE: (206) 436-0900

legal and/or beneficial owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

67.     Plaintiff Harold Arlen Trust acquired the U.S. copyrights identified in the Composition Chart annexed as Exhibit A by operation of will and through termination notices served and filed by Harold Arlen during his lifetime with the U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

68.     Plaintiff Harold Arlen Trust is the legal owner of certain of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

### Ray Henderson

69.     Ray Henderson (1896-1970) was born in Buffalo, New York and studied piano and composition at the Chicago Conservatory where he cultivated a melodic style that helped him write enduring American standards, such as *Life Is Just A Bowl of Cherries*, *Bye Bye Blackbird*, and *Five Foot Two Eyes Of Blue*.

70.     Henderson was part of the most successful songwriting team of the late 1920s and 1930s, Henderson, Brown and DeSylva. The threesome created several memorable hits from the era including *It All Depends On You*, *Broken Hearted*, and *If I Had A Talking Picture of You.*



71.     Henderson contributed to several Broadway shows throughout his career including Manhattan Mary, George White's Scandals, Good News, Hold Everything,

COMPLAINT 16

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

Three Cheers, Follow Through, Flying High, Hot-Cha, Strike Me Pink, Ziegfeld Follies of 1943 and Say When. In 1956, Henderson's songwriting life was the subject of a film called "The Best Things In Life Are Free" starring Gordon MacRae, Dan Dailey and Ernest Borgnine as the real-life songwriting team of Buddy DeSylva, Lew Brown and Ray Henderson.

72.    Ray Henderson was among those selected for the inaugural induction into the Songwriters Hall of Fame in 1970.

### Ray Henderson Music Co. Inc.

73.    Ray Henderson Music Co. Inc. is a Delaware corporation formed by Ray Henderson's children.  Ray Henderson Music Co. Inc. acquired the copyrights in the respective Subject Compositions by assignment from his children who acquired the copyrights by termination notices timely served and filed with U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

74.    Plaintiff Ray Henderson Music Co. Inc. is the legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all causes of action.

### Harry Warren

75.    Harry Warren (1893-1981) has perhaps contributed more to the great American songbook than any other songwriter in history. Warren was born to Italian immigrant parents in Brooklyn, New York. After serving in the US Navy in World War I, Warren began writing songs.

76.    In the years 1931 to 1945, Warren wrote more hit songs than Irving Berlin. He was nominated for the Academy Award for Best Song eleven times (more than Berlin, George Gershwin, Cole Porter or Richard Rodgers) and won three Oscars for composing *Lullaby of Broadway*, *You'll Never Know,* and *On the Atchison, Topeka and the Santa Fe*.

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

77.    Warren wrote over 800 songs including *Chattanooga Choo Choo,* the first song to receive a gold record, presented by RCA Victor in 1942, for sales of 1.2 million copies. Over the course of his career, Warren wrote 81 top 10 hits, including timeless classics such as *At Last*, *I Only Have Eyes For You*, *That's Amore*, *You Must Have Been A Beautiful Baby*, *Jeepers Creepers*, and *The Gold Diggers' Song (We're in the Money)*.



78.    Warren was one of America's most prolific film composers, and his songs have been featured in over 300 films. Harry Warren was inducted into the Songwriters Hall of Fame in 1971.

### Four Jays Music Company & Julia Riva

79.    In 1955 Harry Warren formed the Four Jays Music Company, a California corporation, to own the copyrights in his musical works.

80.    Four Jays Music Company acquired the copyrights in the respective Subject Compositions by assignment from Harry Warren and third party music publishers, as well as by assignment by Harry Warren's wife, daughter, and grandchildren, who acquired the copyrights by termination notices timely served and filed with U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

81.    Plaintiff Four Jays Music Company is a legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

COMPLAINT 18

82.    Julia Riva is a legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action, as a result of termination notices filed and served on or after January 1, 1997.

### The Subject Compositions

83.    Plaintiffs are the owners of the musical compositions listed in the Composition Chart annexed as Exhibit A (collectively, the "Subject Compositions") that are the subject of this action.

84.    The copyrights for all the Subject Compositions have been registered and renewed with the U.S. Copyright Office, and each Subject Composition is the subject of a valid U.S. copyright. The Composition Chart annexed as Exhibit A identifies the copyright registration numbers for each of the Subject Compositions.

85.    Plaintiffs are the owner of a share in each of the Subject Compositions in the percentages listed on Exhibit A.

86.    As discussed more fully below, the Defendants have infringed, and are continuing to infringe, the copyright in each of the Subject Compositions by willfully reproducing and distributing them without a license.

### Background

87.    Before digital music distribution, recorded music was physically distributed through brick-and-mortar stores that were confined by the limitations of shelf space. Recording artists signed exclusive recording contracts with record labels in order to have their records pressed and distributed in national record stores.

88.    It is hard to imagine that a person walking into Tower Records, off the street, with arms full of CDs and vinyl records and claiming to be the record label for Frank Sinatra, Louis Armstrong and Ella Fitzgerald, could succeed in having that store sell their pirated copies directly next to the same albums released by legendary record labels, Capitol, RCA and Columbia, and at a lower price.

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

89.    Yet, this exact practice occurs every day in the digital music business, where there is unlimited digital shelf space (for example, there are more than 50 million recordings in the Amazon music store) and a complete willingness by the digital music stores like Amazon to seek popular and iconic recordings from any source, legitimate or not, provided they participate in sharing the proceeds.

90.    The iconic status of the pirated recordings of the Subject Compositions at issue in this case cannot be overstated. Any list of the most popular singers and musicians of any period between 1930 and 1970 would be replete with the artists who have recorded Plaintiffs' musical works, some of them multiple times.

91.    All the recordings on the Infringement Chart (Exhs. B-D) embodying the Subject Compositions are pirated copies, or "bootlegs." Defendants' digital phonorecord deliveries of these pirated copies were all made without authorization from the copyright owners of the sound recordings or those who originally "fixed" them as required by Section 115 (discussed below), and the copyright owners of the Subject Compositions.

92.    Defendants all generate illicit revenue for themselves when these and other pirated copies are sold or distributed.

**The Pirated Recordings**

93.    All the recordings identified in Exhibits B-D are pirated. Defendants have taken recordings of the Subject Compositions – in which they hold no rights – and reproduced and distributed pirated copies of them to the public, for profit, without authorization.

94.    Virtually all the recordings at issue in this case were originally made between 1930 and 1972.

95.    Since Pickwick did not originally "fix" any of the relevant recordings, the only way for it to acquire the rights to duplicate and distribute them would be to purchase or license rights in these recordings.

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

96.     Upon information and belief, Pickwick never acquired permission or the rights to reproduce or distribute any of these recordings from any person who lawfully fixed them or from the owner of the copyright in the sound recording. Pickwick is simply taking previously released recordings and selling them as if they were the rightful owner. Amazon is duplicating Pickwick's pirated sound recordings of the Subject Compositions and selling the pirated copies for profit.

**Defendants Have Infringed the Subject Compositions**

97.     The Infringement Chart annexed as Exhibits B-D sets forth (1) each pirated recording of the Subject Compositions within the Pickwick-Amazon distribution chain thus far identified by Plaintiffs that these

98.     Each of the recordings identified in the Infringement Chart annexed as Exhibits B-D embodies at lease one of the Subject Compositions.

99.     Defendants have reproduced, distributed, imported, and/or made the recordings identified on Exhibits B-D available for digital phonorecord deliveries through Amazon's digital music.

100.    Plaintiffs have not authorized any reproduction or distribution or importation of the recordings of the Subject Compositions identified on Exhibits B-D.

101.    The various types of unauthorized reproductions, distributions, and/or digital phonorecord delivery configurations of each of the pirated recordings of the Subject Compositions made and/or authorized by Defendants are discussed briefly below.

*Permanent Downloads*

102.    Permanent download means a digital transmission of a sound recording of a musical work in the form of a download, where such sound recording is accessible for listening without restriction as to the amount of time or number of times it may be accessed.

COMPLAINT 21

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

103.   Amazon has made available, reproduced, and distributed permanent downloads of the recordings of the Subject Compositions listed on Exhibits B-D to its customers.

104.   Amazon was unlawfully authorized and directed to do so by Pickwick (directly and/or by its distributor).

105.   Reproducing or distributing permanent downloads of recordings of the Subject Compositions require licenses from the copyright owners of the Subject Compositions and all the Defendants failed to obtain such licenses for each entry on the Infringement Chart at Exhibits B-D.

106.   The reproduction and distribution of permanent downloads of recordings of the Subject Compositions by Amazon, and the authorization of this activity by Pickwick, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### *Promotional Clips*

107.   Defendant Amazon has a feature in its online music store that allows users to interactive stream a sample, promotional clip, of the recordings that were available for sale as permanent downloads.

108.   Promotional clips are 30–90 seconds long and their purpose was to encourage the purchase of the tracks as permanent downloads.

109.   Amazon has distributed copies of the recordings of the Subject Compositions in the recordings identified on Exhibits B-D as promotional clips in its online music store.

110.   Amazon was unlawfully authorized and directed to do so by Pickwick (directly and/or by its distributor).

111.   These promotional clips of recordings of the Subject Compositions are interactive streams that require a license from the copyright owners of the Subject

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

Compositions and Defendants all failed to obtain such licenses for each entry on the Infringement Chart annexed as Exhibits B-D.

112. Defendants Amazon's reproduction and distribution of promotional clips of pirated recordings of the Subject Compositions, and authorization of this activity by Pickwick, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

### Server Copies

113. Pickwick has, directly and/or though a distributor, delivered to Amazon a copy of each recording of the Subject Compositions identified on Exhibits B-D.

114. Amazon has reproduced at least one copy of each recording of the Subject Compositions identified on Exhibits B-D on its servers.

115. Amazon has made one copy of each recording of the Subject Compositions identified on Exhibits B-D available for sale as permanent downloads through its online music store.

116. Amazon was unlawfully authorized and directed to do so by Pickwick (directly and/or by its distributor).

117. Making server copies of any of the recordings embodying the Subject Compositions identified on Exhibits B-D requires a license from the copyright owners of the Subject Compositions.

118. Defendants failed to obtain such licenses for each of the recordings embodying the Subject Compositions identified on Exhibits B-D.

119. Amazon's reproduction of server copies of pirated recordings of the Subject Compositions for sale of permanent downloads through their music stores, and authorization of this activity by Pickwick, as well the distribution of the server copies of pirated recordings of Subject Composition to Amazon, by Pickwick, infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

COMPLAINT 23

*Making Available*

120.   Defendants have made and continue to make available, or authorize making available, permanent downloads of the recordings of the Subject Compositions identified on Exhibits B-D to the public by delivering, uploading and/or offering them as permanent downloads through the Amazon music store.

121.   The Defendants' making available recordings of the Subject Compositions identified on Exhibits B-D for permanent downloads, and authorization of this activity, by Pickwick, requires a license from the copyright owners of the Subject Compositions

122.   Amazon has made one copy of each recording of the Subject Compositions identified on Exhibits B-D available for sale as permanent downloads through its online music store.

123.   Amazon was unlawfully authorized and directed to do so by Pickwick (directly and/or by its distributor).

124.   Defendants failed to obtain such licenses for each recording of the Subject Compositions identified on Exhibits B-D and have thereby infringed Plaintiffs' exclusive distribution rights under 17 U.S.C. § 106(3) as a "deemed distribution." *A&M Records v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Perfect 10, Inc. v. Microsoft.com, Inc.*, 487 F.3d 701 718–19 (9th Cir. 2007).

*Importation*

125.   Importation of phonorecords of a musical composition acquired outside the U.S. requires authorization of the owner of the copyright of the musical composition under Section 602 of the Copyright Act. Importation without the authority of the owner of the copyright in that composition is an infringement of the exclusive distribution rights under 17 U.S.C. § 106(3).

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

126. Defendants have engaged in the unauthorized importation of phonorecords of the Subject Compositions, acquired outside the U.S., by digital phonorecord deliveries, or other means.

127. The Pickwick entities are all located in the United Kingdom or Australia, outside the United States. Amazon and Pickwick (directly and/or through its distributor) have engaged in the importation of phonorecords of each recording embodying the Subject Compositions listed on Exhibits B-D into the United States by digital phonorecord delivery, or other delivery of phonorecords.

128. None of the Defendants obtained importation authorization from the U.S. copyright owners of the Subject Compositions.

129. Defendants' respective importations of phonorecords embodying the Subject Compositions identified on Exhibits B-D infringe Plaintiffs' exclusive importation rights under 17 U.S.C. § 602 and distribution rights under 17 U.S.C. § 106(3).

**Willfulness**

130. The infringing conduct of the Defendants is willful. Pickwick knows that it does not have authority to reproduce, distribute or for importation of the recordings of the Subject Compositions listed on Exhibits B-D, or to authorize these actions by Amazon. Pickwick has pirated thousands of recordings and sold them in the United States through the Amazon music store.

131. Further, Amazon has had knowledge of their own infringing conduct and that of Pickwick and has continued to work with Pickwick and make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Pickwick provided and/or were recklessly indifferent or willfully blind to their own infringing conduct.

132. Amazon has willfully failed to employ adequate human resources, screening mechanisms, or use of digital fingerprinting technology to detect

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

unlawfully duplicated recordings in their stores that it routinely uses for other services, for example, Amazon's "scan and match" service.

133.   In addition to the recordings identified on Exhibits B-D, there are believed to be many other pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization that Plaintiffs have not yet identified or that are no longer available on the Amazon music store.

134.   The infringement by Defendants of each Subject Composition on each pirated recording identified in the Infringement Chart at Exhibits B-D began as of the date of upload, receipt, delivery to and/or reproduction by Amazon of server copies of the pirated recordings of the Subject Compositions designated for reproduction and distribution by Pickwick through the Amazon music store and continues to the present. The infringements identified in Exhibits B-D all occurred within three years of filing this Complaint.

135.   By their conduct described above, Defendants have infringed and are continuing to infringe Plaintiffs' copyrights on a regular basis in violation of 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*

136.   As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to elect either an award of actual damages, including Defendants' profits, or statutory damages under 17 U.S.C. § 504(c).

137.   Defendants' infringement is and has been willful, intentional, purposeful and with willful disregard of the rights of Plaintiffs. Anything less than maximum statutory damage awards would encourage infringement, amount to a slap on the wrist, and reward Defendants for their willful infringement on a grand scale.

138.   Plaintiffs are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

139.   Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants from reproducing, distributing, making available,

COMPLAINT 26

importing and selling the pirated recordings of the Subject Compositions without license or authorization in violation of the Copyright Act.

**First Claim for Copyright Infringement by**
**SA Music LLC and William Kolbert, as Trustee**
**of the Harold Arlen Trust Against**
**Pickwick and Amazon**

140.  Plaintiffs repeat each and every allegation of the Complaint.

141.  Plaintiffs  SA Music LLC and William Kolbert as Trustee of the Harold Harlen Trust claim that Defendants Pickwick and Amazon have unlawfully reproduced, distributed, made available, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit B by the methods identified herein, and/or have unlawfully directed or authorized this activity.

142.  Defendants have thereby willfully infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act.

**Second Claim for Copyright Infringement by**
**Ray Henderson Music Co., Inc. Against**
**Pickwick and Amazon**

143.  Plaintiffs repeat each and every allegation of the Complaint.

144.  Plaintiff Ray Henderson Music Co., Inc. claims that Defendants Pickwick and Amazon have unlawfully reproduced, distributed, made available, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit C by the methods identified herein, and/or have unlawfully directed or authorized this activity.

145.  Defendants have thereby willfully infringed Plaintiff's copyrights in the Subject Compositions in violation of the Copyright Act.

MANN LAW GROUP PLLC
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

**Third Claim for Copyright Infringement by
Four Jays Music Company and Julia Riva Against
Pickwick and Amazon**

146.   Plaintiffs repeat each and every allegation of the Complaint.

147.   Plaintiffs Four Jays Music Company and Julia Riva claim that Defendants Pickwick and Amazon have unlawfully reproduced, distributed, made available and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit D by the methods identified herein, and/or have unlawfully directed or authorized this activity.

148.   Defendants have thereby willfully infringed Plaintiff's copyrights in the Subject Compositions in violation of the Copyright Act.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants, jointly and severally, as follows:

1.   A declaration that Defendants have infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act;

2.   A declaration that each of Defendants' infringements was willful;

3.   At Plaintiffs' election, an award of Plaintiffs' actual damages, including Defendants' profits, or a separate award of statutory damages in amounts to be determined by the jury for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally;

4.   A permanent injunction barring the Defendants from continued infringement of Plaintiffs' copyrights in the Subject Compositions pursuant to 17 U.S.C. § 502; and

**MANN LAW GROUP PLLC**
1420 Fifth Avenue – Suite 2200
Seattle, WA  98101
TELEPHONE: (206) 436-0900

5. Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

Dated:  New York, New York
April 16, 2020

Respectfully submitted,

By:  *s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
MANN LAW GROUP PLLC
1420 Fifth Avenue, Suite 2200
Seattle, Washington 98101
Phone: (206) 436-0900
Fax: (866) 341-5140
E-mail: phil@mannlawgroup.com

Matthew F. Schwartz  (*Pro Hac Vice Pending*)
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1001
New York, New York 10001
Phone: (212) 714-1200
E-mail: mschwartz@splaw.us

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Local Civil Rule 38, and otherwise, Plaintiffs respectfully demand a trial by jury on all issues so triable.

DATED:  April 16, 2020

Respectfully submitted,

By:   *s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
MANN LAW GROUP PLLC
1420 Fifth Avenue, Suite 2200
Seattle, Washington  98101
Phone: (206) 436-0900
Fax: (866) 341-5140
E-mail: phil@mannlawgroup.com

Matthew F. Schwartz  (*Pro Hac Vice Pending*)
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1001
New York, New York 10001
Phone: (212) 714-1200
E-mail: mschwartz@splaw.us

*Attorneys for Plaintiffs*

COMPLAINT 30